Plaintiff provoked issuance of temporary restraining order to stop public sale of real estate inherited by her as sole heir of Peter and Rosa Weatherford, her father and mother, alleging that the mortgage note foreclosed upon is prescribed; and, incidentally, attacked as being null and void certain documents signed by her after death of her father, relied upon by defendant as an assumption and renewal of the mortgage indebtedness and as evidencing unconditional acceptance by plaintiff of successions of decedents.
Peter Weatherford died intestate in Natchitoches Parish on February 15, 1941, leaving a small estate consisting of six lots and improvements thereon without the limits of the city, and some personal property of a value not definitely fixed but certainly not in excess of $1,600. His wife predeceased him by several years.
On April 8, 1922, while his wife was living, Weatherford executed to his own order a promissory note for $950, due on demand, with 8% per annum interest, which was secured by mortgage on the above-mentioned property. The act of mortgage was duly recorded and was reinscribed January 25, 1932. The note was delivered to the defendant, Jos. H. Levy, or to the mercantile firm of which he was a member, to liquidate a pre-existing indebtedness or other obligation. It is now and has been for many years owned and held by Levy.
On April 8, 1932, Weatherford signed a renewal of the note wherein he acknowledged that the balance due thereon was $619.68, and waived prescription. Endorsements on the note's reverse side reflect that interest thereon was paid to April 8, 1935. Since that date no payment on interest or principal account has been made; nor is it contended that the maker renewed or acknowledged the obligation in writing since the accrual of prescription on April 8, 1940.
Plaintiff understood that the property was affected by a mortgage of some character to Levy and within a few weeks after her father's death she called to see him concerning same and another matter affecting the succession. She was then informed by Levy of the existence of the mortgage. At that time or on a subsequent date he told her that the balance due on the mortgage note was $619.68, which did not include accrued interest. Mr. Levy advised plaintiff to take appropriate legal steps to have herself recognized as sole heir of her father and mother and be sent into possession of the property so that she would be in a position to avail herself of the law exempting homesteads from taxation. He thought the property's assessed value too much. So far as the record discloses, he did not tell her at that time nor at any subsequent conversation between them that he desired or required a renewal of the mortgage indebtedness or an assumption thereof by her, nor did he provide her with facts needful to the formation of an opinion of the efficacy of the note and mortgage.
Subsequent to plaintiff's and defendant's first discussion of the mortgage indebtedness, evidently defendant conferred with his attorney, Mr. B.B. Breazeale, of the Natchitoches bar, concerning the matter and it was then agreed that a new mortgage and note be required. Mr. Levy, inter alia, informed Mr. Breazeale that plaintiff desired to have the property "put in her name in order to be able to get a tax exemption", and on her last visit to Levy's office she was instructed to see Mr. Breazeale to the end that the appropriate succession pleadings and papers be prepared for her signature. She complied with the advice and went to the attorney's office. Mr. Levy followed within half an hour. At that time Mr. Breazeale procured from plaintiff facts concerning the family history, etc., to enable him to prepare petition in her behalf to be recognized as sole heir of her mother and father and be sent into possession of the property in question. She was advised that the papers could not be completed that day and to return the following day, which she did. Mr. Breazeale had learned from Mr. Levy the balance in principal and interest due on the note was then $942.70, to which he added $25 to cover costs of recording papers, canceling mortgage and his fee. A new note for $967.70 was prepared and a new mortgage on said property drawn to secure *Page 261 
the note. Plaintiff signed the succession papers, the new note and the new mortgage. The signature of her husband was desired on the mortgage and all papers were held by Mr. Breazeale awaiting his signature.
Within three days after the papers were signed plaintiff called at Mr. Breazeale's office to ascertain if her husband had come by and signed the mortgage and in the course of the conversation between them she mentioned that her step-mother was giving some trouble about personal property of the succession. Prior to this time the attorney did not know that Weatherford had left a surviving widow. It instantly occurred to him that if this widow was in necessitous circumstances it would be unwise for plaintiff to accept her father's succession unconditionally because thereby she would become personally responsible to the widow for the S1,000 vouchsafed by Article No. 3252 of the Civil Code.
Mr. Breazeale investigated the law applicable to the facts, after ascertaining that the widow was inpecunious, and advised plaintiff and Mr. Levy that she should not unconditionally accept the successions. This was agreed to by them and at the same time, at Mr. Breazeale's suggestion, it was agreed that the original mortgage be foreclosed and at sale thereunder Mr. Levy would purchase the property and thereafter sell same to plaintiff for the mortgage debt plus expenses of foreclosure, etc. The foreclosure suit was promptly filed. Plaintiff as sole heir of her father and mother was made defendant.
Some days after plaintiff was served with process, she became worried over the situation of things because it occurred to her that it was possible for Mr. Levy not to be the successful bidder at the sheriff's sale. She was very anxious to acquire good title to the property. She decided to consult another attorney with regard to her rights. She put her case in the hands of Mr. W. Peyton Cunningham, her present counsel, and acquainted him with all of the facts so far as she knew them. Mr. Cunningham quickly reached the conclusion that the note foreclosed on was prescribed. On the telephone he requested that all the papers held by Mr. Breazeale be surrendered to plaintiff or to him, as her attorney. The request was refused. This occurred on May 14th. Mr. Breazeale on that day filed the mortgage for registry but retained possession of the note and succession papers. The present injunction suit followed.
The petition herein recites in detail the pertinent factual history preceding its filing, an epitome of which is given above. Plaintiff also alleges that she was wholly uninformed as regards the status of the mortgage note and of her legal rights in connection therewith; that her action in signing the papers prepared by and presented to her by Mr. Breazeale was entirely influenced by his advice and suggestions and that of Mr. Levy; that it was her primary desire to secure good title to the property, and she was ignorant of the note's barred status until so advised by her own counsel. She specifically repudiates her signature to all of said documents as having been affixed in error of fact and law because she did not know the note was legally without efficacy and did not desire nor intend to accept the successions unconditionally; that she had never seen the note prior to that time and therefore had no opportunity to know its status from inspection; that had she known the note had prescribed she would not have done any act whereby it would have been renewed or from which personal responsibility for its payment would have devolved upon her.
Plaintiff's complaint, reduced to its essence, is that the note is prescribed, and that what she has done in the way of renewing or acknowledging it, because of the facts and circumstances, is abortive of such effect because done in error of fact and of law, and she accordingly prays.
Mr. Breazeale was impleaded as defendant. As to him, the prayer is that he be required to deliver to plaintiff the mortgage note and succession papers in his possession.
Answering, defendants virtually admit the factual history above recited, but deny essential conclusions drawn by plaintiff therefrom. They aver that in signing the papers in question plaintiff acted with full knowledge of their meaning and significance and not through error of fact or law; that she executed the new note and mortgage after being aware of the existence of the old ones given by her father and that in doing so she knowingly discharged a natural obligation as his sole heir.
There was judgment for plaintiff enjoining and restraining Levy and the sheriff from further proceeding with the sale of the succession property, and against Breazeale *Page 262 
ordering him to deliver to plaintiff the succession papers in his possession. Her demand for surrender of the new note for $967.70 was specifically rejected. Defendant Levy was cast for all costs. Plaintiff only appealed. Defendants have not answered the appeal.
The judgment, in effect, sustains the plea of prescription of five years as against the original mortgage note foreclosed upon, but, inferentially, holds that the new note and mortgage are binding obligations. The only remaining issue is that which involves the status of the new note and mortgage.
In this court defendants contend that plaintiff accepted the succession of her father after being apprised of the existence of the mortgage against his property, and, therefore, she is personally liable for the succession's obligations, citing Articles Nos. 988, and 1013 of the Civil Code; that although the old mortgage note was prescribed, a natural obligation rested upon plaintiff as sole heir to discharge the same, citing Articles Nos. 1757 and 1758 of the Civil Code; that such an obligation is sufficient consideration upon which to base a new contract, citing Article No. 1759 of the Civil Code; and, lastly, that even though plaintiff acted in error when she signed the mortgage, note and other papers, as regards the prescription of the old note, the plea of error is unavailing because of Section 5 of Article No. 1846 of the Civil Code, which reads: "A promise or contract, that destroys a prescriptive right, shall not be avoided by an allegation that the party was ignorant or in an error with regard to the law of prescription."
Here, plaintiff submits her case upon two propositions:
1. That the mortgage and note signed by her were not legally deliverable; were rendered inefficacious, because upon learning of the existence of the surviving widow, the parties, by agreement, abandoned the original plan of procedure and adopted a new one which eliminated completely from consideration the new papers and thereby restored the status quo ante. Cited in support of this contention is that portion of Section 16 of Act No. 64 of 1904 (NIL), which reads:
"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto.
"As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or endorsing, as the case may be * * *."
2. Alternatively, that her signatures to the new mortgage and note were affixed through error of fact for the reasons alleged in her petition.
The material facts, in the main, are not controverted. There is disagreement, however, as between plaintiff on one side and defendants on the other, with regard to the understanding reached after Mr. Breazeale learned that Weatherford left a widow in necessitous circumstances. Plaintiff testified that it was agreed that the entire plan theretofore pursued would be abandoned and all papers signed in furtherance thereof be discarded. Defendants testified it was agreed that the plan to have plaintiff accept the successions unconditionally and be recognized as sole heir was abandoned and that the succession papers should not be filed. Neither testified that it was agreed that the new mortgage and note should be regarded as binding obligations; nor that the mortgage should or should not be filed for record. Their testimony is silent as to the role these new papers should play in the new arrangement. The fact that the new mortgage was not promptly filed for record creates a strong presumption that it was not intended to have any effect after the new understanding was reached.
The circumstances and the attitude of all parties strongly support plaintiff's contentions. At the time the change in plan was agreed upon it was not known that the note had prescribed. Mr. Breazeale had not seen it and Mr. Levy testified that he thought the reinscription of the mortgage in 1932 had the effect of preserving the note's life for another ten years. There being no uncertainty of belief on the subject, what reason would there have been for excepting the new note and mortgage from the agreement to abandon the original plan and discard the papers? If the old note had been alive, as was thought, and foreclosure thereon agreed upon, what value to Mr. Levy could the new note and mortgage have had? The fact that it was agreed to foreclose the old mortgage forcefully argues against the contention that any importance thereafter would be attached to the new one. If the new note and mortgage after change in plan, were intended to operate according to their *Page 263 
purport, no foreclosure was legally possible on the old ones.
The agreement to which plaintiff, an uneducated negro woman, originally assented was that necessary steps be taken to have her judicially recognized as owner of the property without subjecting her to liability for payment of succession obligations beyond the mortgage indebtedness which she thought was effective as such; and as a concomitant of the agreement she was willing to renew and assume said mortgage indebtedness. The primary agreement and the concomitant one were so closely interrelated and associated as to form one covenant. Mr. Levy's primary interest centered in the mortgage renewal and assumption, whereas plaintiff's was to become owner of the property. It would have been most unusual for plaintiff to recede from that part of the agreement embracing her material interest and at the same time assent to continuance of that part in which Mr. Levy only was interested. It is illogical, at least, to contend that plaintiff was willing to give up her ambitions and at the same time add to the discomfiture of her situation by granting to the other party that which he desired.
As before stated, the original plan of procedure was abandoned in order to protect plaintiff from personal liability against the widow's claim. Mr. Breazeale was solicitous of her welfare in this regard, but his efforts in her behalf will have been in vain if defendants' contentions, above stated, are upheld. If the new mortgage and note are held to be binding on plaintiff, her action in signing them operates as a tacit and unconditional acceptance of the successions of her father and mother. It was held in the case of R.T. Scott, Administrator, v. T. Warren Briscoe et al., 36 La.Ann. 278, that an heir by joining with other heirs in a mortgage of succession property unconditionally accepts the succession. Analogous is Foster et al. v. Spann et al.,170 La. 1019, 1029, 1030, 129 So. 622. In that case some of the heirs of a succession leased a part of the family property. This was specifically held to be an unconditional acceptance of the succession by the mortgaging heirs.
We are impelled to the conclusion that after discovering Weatherford left a widow in necessitous circumstances, it was mutually agreed by plaintiff and defendant that what had been done toward accepting the successions and renewing the mortgage indebtedness should be entirely effaced, abrogated and abandoned. They were within their rights in doing so as none of the papers had been filed. This being true, the note and mortgage as legal obligations thereby ceased, and in legal contemplation, were not deliverable. Neither, under the plain wording of the NIL, quoted above, could be legally delivered to Mr. Levy without the consent of plaintiff. The status of matters as between plaintiff and defendant, after their plans were mutually changed, was as though none of the papers had been prepared and signed. These conclusions obviate passing on plaintiff's alternative position.
For the reasons herein assigned, the judgment appealed from is amended by decreeing the note for $967.70 executed by plaintiff on March 18, 1941, and the mortgage given to secure same, to be null, void and without legal effect as such, and ordering defendant B.B. Breazeale, Jr., to deliver to plaintiff or her counsel the said note; and, as thus amended, the judgment appealed from is affirmed, with costs.
DREW and HAMITER, JJ., concur.